# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD H. JONES,<br><br>     Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>     Defendant. | Case No.  1:13-cv-01135-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 16, 17, 18) |

## I.

## INTRODUCTION

Plaintiff Ronald H. Jones ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from depression, anxiety disorder, sleep apnea, carpal tunnel syndrome, cognitive disorder, polysubstance dependence, and a history of abnormal EEG post status brain tumor.  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

///

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 7, 9.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on October 16, 2009.  (AR 146.)  Plaintiff's applications were initially denied on January 22, 2010, and denied upon reconsideration on August 2, 2010.  (AR 65-68, 69-71.)  Plaintiff requested and received a hearing before Administrative Law Judge Philip E. Callis ("the ALJ").  Plaintiff appeared for a hearing on June 23, 2011.  (AR 37-.)  On November 10, 2011, the ALJ found that Plaintiff was not disabled.  (AR 20-31.)  The Appeals Council denied Plaintiff's request for review on May 24, 2013.  (AR 1-4.)

### A.    Hearing Testimony

Plaintiff testified at the hearing on June 23, 2011, and was represented by his attorney, Gina Fazio.  (AR 39-.)  Plaintiff was fifty-six years old on the date of the hearing.  (AR 41.)  Plaintiff received his GED, graduated from college and obtained a teaching credential.  (AR 41-42.)  Plaintiff last worked as a full-time music teacher at Los Banos High School.  (AR 42.)  Plaintiff's contract was not renewed after his second year of teaching.  (AR 42.)  Plaintiff has continued to look for employment, mainly teaching positions, but also in department stores and has received a few interviews.  (AR 42-43.)  Plaintiff does not think that he would be able to teach because he is a sensitive person and the high school kids were just relentless.  (AR 50.)  Plaintiff does not believe he has the energy or drive.  (AR 50.)

Plaintiff lives in a house with his wife who is retired.  (AR 43.)  Plaintiff usually gets up between eight and ten and fixes himself a microwave meal.  (AR 43.)  Plaintiff is able to take care of his personal hygiene.  (AR 43.)  Plaintiff has some balance issues.  (AR 44.)  Plaintiff uses the computer to search for teaching jobs, surfs the internet for a short while, uses Facebook, and sleeps a lot during the day.  (AR 44-45.)  Plaintiff leaves the house once in a while to go shopping with his wife or attend doctor appointments.  (AR 45-46.)  Plaintiff had not seen his doctor in three to four months because of financial issues.  (AR 47.)

Plaintiff drank alcohol when he was teenager, but has not had any alcohol at all since September 7, 2008.  (AR 47-48.)  Plaintiff does not even drink socially and has an aversion to

1    alcohol.  (AR 48.)  Plaintiff has not used any street drugs or medical marijuana.  (AR 48.)

2        Plaintiff has a driver's license and is able to drive by himself.  (AR 48-49.)  His hands go

3    to sleep due to his carpal tunnel so he only drives when he has to.  (AR 49.)  He drives about

4    once a week because he has a minimart across the street that he can walk to.  (AR 52.)  When

5    driving, Plaintiff has trouble judging distances and will go up on the curb.  (AR 52.)

6        Plaintiff does some chores around the house: loads the dishwasher, occasionally does

7    small loads of laundry, and prepares simple meals in the microwave.  (AR 49.)  Plaintiff can

8    sweep but becomes tired after ten to twenty minutes.  (AR 49.)  Plaintiff's wife does most of the

9    shopping, but Plaintiff walks to a minimart across the park from where he lives to get a soda.

10   (AR 49-50.)

11       Since Plaintiff had a craniotomy, his left foot sometimes does not rise.  (AR 50-51.)  He

12   fell flat on his face once when working at the high school and fell over in class once.  (AR 51.)

13   Since the brain surgery, Plaintiff cannot handle any stress.  (AR 51.)  When he was teaching, the

14   students were relentless and Plaintiff felt like everyone was watching him and became paranoid.

15   (AR 52.)  It got to the point where he could hardly take roll.  (AR 52.)  Plaintiff began thinking

16   that his wife was plotting against him.  (AR 52.)  At school, it was hard to concentrate and

17   impossible to carry out tasks.  (AR 52.)  Plaintiff missed the dates to turn in student grades.  (AR

18   52.)  He was having extreme forgetfulness and confusion.  (AR 52.)

19       Plaintiff has been diagnosed with carpal tunnel and his hands go to sleep.  (AR 53.)  He

20   has trouble playing his guitar because the pick flies out of his fingers.  (AR 53.)  Plaintiff saw a

21   doctor for his carpal tunnel who wanted to perform surgery.  (AR 56.)  Plaintiff heard from other

22   people that it might get worse.  (AR 56.)

23       Plaintiff does not have any side effects from the medication that he is taking.  (AR 53.)

24   Plaintiff sleeps a lot during the day at least three or four times a week.  (AR 54.)  At times, he

25   cannot sleep at night.  (AR 54.)  Sometimes he will get up at night and pace because he is

26   worried.  (AR 54.)  Plaintiff sleeps between four and seven hours a night.  (AR 54.)

27       Plaintiff watches six to seven hour long programs during the day.  (AR 54.)  Plaintiff's

28   wife says he watches too much television during the day.  (AR 54.)  The television is on all the

1   time and he will watch shows if they are interesting.  (AR 54.)  Plaintiff can follow a half hour

2   television show.  (AR 54-55.)

3        Plaintiff had an evaluation at the sleep center and was told that his sleep apnea was about

4   the worst case the doctor had seen.  (AR 55.)  He had sixteen to eighteen episodes and his blood

5   oxygen got down to about eight-one percent.  (AR 58.)  Plaintiff had a CPAP machine, but had

6   to let it go because of insurance.  (AR 55.)  Plaintiff used the CPAP machine for several months

7   and it seemed to help, but he could no longer afford it.  (AR 55-56.)

8        Steven Schmidt, a vocational expert ("VE"), also testified at the hearing.  (AR 58-60.)

9   The VE classified Plaintiff's past work as music teacher, secondary, light, SVP: 7.  (AR 58.)

10  The ALJ presented a hypothetical of an individual with the residual functional capacity with no

11  exertional limitations, but limited to occasional climbing of ramps and stairs; occasional

12  balancing; no ladders, ropes, scaffolds; frequent on all postural limitations; avoid all hazards

13  such as machinery and heights; further limited to simple, repetitive tasks with limited public

14  contact.  (AR 59.)  The ALJ opined that this individual could not perform Plaintiff's past work.

15  (AR 59.)

16       The ALJ then inquired whether there were any jobs that an individual with the same age,

17  education, and work experience as Plaintiff and the first hypothetical residual functional capacity

18  could perform.  (AR 59.)  The ALJ clarified that this included simple, routine tasks and limited

19  public contact.  (AR 59.)  The ALJ then opined that this individual could work as a dishwasher,

20  47,000 jobs in the state; laborer/stores, 62,000 jobs; or hand packer, 24,000 jobs.  (AR 59.)

21       The ALJ inquired whether there would be any jobs that an individual could perform who

22  could not complete a forty-hour workweek or an eight-hour day.  (AR 59.)  The ALJ opined

23  there were no jobs for this individual.  (AR 59.)  The ALJ then inquired if there would be any

24  jobs for an individual who required two or more absences per month for illness or injury.  (AR

25  59-60.)  The VE stated this individual would not be employable.  (AR 60.)

26  **B.    ALJ Findings**

27       The ALJ found that Plaintiff suffers from the following severe impairments: major

28  depression, anxiety disorder, sleep apnea, carpal tunnel syndrome, cognitive disorder,

1    polysubstance dependence, and a history of abnormal EEG post status brain tumor.  (AR 24.)
2    Plaintiff's impairments, alone or in combination, do not meet or medically equal the severity of
3    one of the listed impairments.  (AR 24.)  Plaintiff has the residual functional capacity to perform
4    medium work.  (AR 26.)  Plaintiff can frequently stoop, kneel, crouch, and crawl, and
5    occasionally climb ramps or stairs and balance; is unable to perform any work requiring him to
6    ladder, rope, scaffold, or work around hazards such as machinery and heights; and is limited to
7    work involving simple repetitive tasks and occasional public contact.  (AR 26.)  Plaintiff is
8    unable to perform any past relevant work.  (AR 30.)  Considering Plaintiff's age, education,
9    work experience, and residual functional capacity, Plaintiff is able to perform other jobs that
10   exist in significant numbers in the national economy.  (AR 30.)  Plaintiff has not been under a
11   disability as defined in the Social Security Act from September 7, 2008 through the date of
12   decision.  (AR 31.)

### III.

### LEGAL STANDARD

15   Congress has provided that an individual may obtain judicial review of any final decision
16   of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).
17   In reviewing findings of fact in respect to the denial of benefits, this court "reviews the
18   Commissioner's final decision for substantial evidence, and the Commissioner's decision will be
19   disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v.
20   Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a
21   scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)
22   (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which,
23   considering the record as a whole, a reasonable person might accept as adequate to support a
24   conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of
25   Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

26   "[A] reviewing court must consider the entire record as a whole and may not affirm
27   simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting
28   Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not

1   this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

2   for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

3   susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

4   upheld.")

5                                               **IV.**

6                            **DISCUSSION AND ANALYSIS**

7         Plaintiff contends that the ALJ erred by failing to include all of his limitations in the

8   residual functional capacity assessment and by not providing legally sufficient reasons to reject

9   the opinion of his treating physician.  (Pl.'s Opening Brief 8-9, ECF No. 16.)   Defendant

10   counters that substantial evidence supports the residual functional capacity assessment and the

11   ALJ properly explained the reasons that minimal weight was given to Dr. Morgan's opinion.

12   (Def.'s Opp. to Pl.'s Opening Brief 7, 10, ECF No. 17.)

13         To qualify for disability insurance benefits, the claimant must show that he is unable "to

14   engage in any substantial gainful activity by reason of any medically determinable physical or

15   mental impairment which can be expected to result in death or which has lasted or can be

16   expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

17   The impairment must render the claimant incapable of performing his previous work and

18   "incapable of performing any other substantial gainful employment that exists in the national

19   economy."   Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. §

20   423(d)(2)(A).

21         The Social Security Regulations set out a five step sequential evaluation process to be

22   used in determining if a claimant is disabled.  20 C.F.R. § 404.1520; Batson v. Commissioner of

23   Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004).  In this instance, Plaintiff is

24   contending that the ALJ in the weight provided to his treating physician's opinion and in

25   determining if the claimant possesses the residual functional capacity to perform work.  See 20

26   C.F.R. § 404.1520(f) and (g).  A claimant's residual functional capacity is what the claimant is

27   able to do despite his physical, mental, nonexertional, and other limitations.  Lee v. Astrue, 695

28   F.Supp.2d 1033, 1038 (C.D. Cal. 2010).

1    **A.      Substantial Evidence Supports the Credibility Finding**

2         Plaintiff does not challenge the ALJ's credibility finding and the Court finds that

3    substantial evidence exists to support the finding.  Determining whether a claimant's testimony

4    regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step

5    analysis.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine

6    if "the claimant has presented objective medical evidence of an underlying impairment which

7    could reasonably be expected to produce the pain or other symptoms alleged."  Lingenfelter v.

8    Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This

9    does not require the claimant to show that his impairment could be expected to cause the severity

10   of the symptoms that are alleged, but only that it reasonably could have caused some degree of

11   symptoms.  Smolen, 80 F.3d at 1282.

12        Second, if the first test is met and there is no evidence of malingering, the ALJ can only

13   reject the claimant's testimony regarding the severity of his symptoms by offering "clear and

14   convincing reasons" for the adverse credibility finding.  Carmickle v. Commissioner of Social

15   Security, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must specifically make findings that

16   support this conclusion and the findings must be sufficiently specific to allow a reviewing court

17   to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not

18   arbitrarily discredit the claimant's testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.

19   2004) (internal punctuation and citations omitted).

20        Here, the ALJ noted that Plaintiff complained of trouble with directions, managing the

21   computer, difficulty with concentrating and focusing his attention.  (AR 28.)  However, Plaintiff

22   is able to drive independently, uses the computer to buy and sell things on eBay and watches

23   television most of the day.  (AR 28, 429.)  Review of the records shows that on a daily basis

24   Plaintiff watches television and plays the guitar.  (AR 182, 190.)  Plaintiff's daily activities

25   involve watching a lot of television – six to seven hour long programs per day, being on the

26   computer and doing some housework.  (AR 54, 186.)  Although Plaintiff states that he has

27   trouble concentrating, he is able to follow along and watch television shows if he finds them

28   interesting.  (AR 54.)

The ALJ noted that Plaintiff goes out of the house daily, plays in a band, and is thinking about taking on new guitar students.  (AR 28.)  While Plaintiff contends that he is unable to work it does appear that he is selling items on e-Bay, playing in a band, and teaching guitar students.  (AR 189, 429, 432.)  Additionally, Plaintiff reported on February 7, 2011 that he intended to get a foster child or adult to take care of.  (AR 467.)

The ALJ found that Plaintiff states he has not had alcohol since he was a teenager, but reported in June 30, 2009 that he had not used alcohol for three weeks.  (AR 28.)  Plaintiff has provided conflicting statements regarding his alcohol use.  At the June 23, 2011 hearing, Plaintiff stated he has not used alcohol at all since September 7, 2008, and does not even drink socially.  (AR 47-48.)  Plaintiff testified that he has not drunk alcohol since he was a teenager and has an aversion to it (AR 48), and states he is a non-drinker (AR 310, 398).  However, he also reports he occasionally uses alcohol (AR 400), and in a July 30, 2009 letter written by Dr. Morgan, it is reported that Plaintiff has used no alcohol for the past three weeks, but prior to that he "was using pretty heavily."  (AR 423.)

The ALJ found that while Plaintiff alleges a severe disability that has prevented him from working since September 2008, Plaintiff did not stop working due to a medical condition and continued to seek employment after his employer failed to renew his contract in May of 2009.  (AR 27), and Plaintiff has been holding himself out as ready, able, and willing to work.  (AR 28.)  Although Plaintiff states that he became unable to work in September 2008 (AR 114, 126), Plaintiff did not have any change to his hours, job duties or attendance, and continued working until his contract was not renewed on May 21, 2009, (AR 126).

Additionally, Plaintiff has continued to look for work as a teacher and in department stores.  (AR 42-43.)  Plaintiff stated that he had a few job interviews at first, but those dried up as the teaching profession has taken a big hit in this economy.  (AR 43.)  There is substantial evidence to support the finding that Plaintiff has continued to seek employment during the time period he claims that he was unable to work.  (AR 114, 126, 211, 212, 216, 320, 324, 422, 425, 426, 427, 428, 430, 431, 432, 447, 457, 467, 477, 480).

The ALJ provided clear and convincing reasons which are supported by substantial

1     evidence in finding that Plaintiff's inconsistent reports bear on his credibility and that he is, at

2     best, exaggerating his limitations.  (AR 28.)  The ALJ noted that he did not penalize Plaintiff for

3     these inconsistencies, but noted the discrepancies as they detract from his credibility.  (AR 28.)

4            **B.**       **The ALJ Did Not Err in Giving Little Weight to Dr. Morgan's Opinion**

5         Plaintiff contends that the ALJ erred by rejecting the opinion of his treating physician,

6     Dr. Morgan.  (ECF No 16 at 11-16.)  Defendant counters that the ALJ properly explained why he

7     gave little weight to the opinion of Dr. Morgan.  (ECF No. 17 at 9-12.)

8         The weight to be given to medical opinions depends upon whether the opinion is

9     proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d

10    821, 830-831 (9th Cir. 1995).  In general a treating physician's opinion is entitled to greater

11    weight than that of a nontreating physician because 'he is employed to cure and has a greater

12    opportunity to know and observe the patient as an individual."  Andrews v. Shalala, 53 F.3d

13    1035, 1040-41 (9th Cir. 1995) (citations omitted).  If a treating physician's opinion is

14    contradicted by another doctor, it may be rejected only for "specific and legitimate reasons"

15    supported by substantial evidence in the record.  Ryan v. Commissioner of Social Sec., 528 F.3d

16    1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

17        Where the treating physician's opinion is contradicted by the opinion of an examining

18    physician who based the opinion upon independent clinical findings that differ from those of the

19    treating physician, the nontreating source itself may be substance evidence, and the ALJ is to

20    resolve the conflict.  Andrews, 53 F.3d at 1041.  However, if the nontreating physician's opinion

21    is based upon clinical findings considered by the treating physician, the ALJ must give specific

22    and legitimate reasons for rejecting the treating physician's opinion that are based on substantial

23    evidence in the record.  Andrews, 53 F.3d at 1041.

24        While Dr. Morgan had been Plaintiff's treating physician, his opinion was contradicted

25    by other medical opinions and evidence.  The ALJ may reject the opinion for "specific and

26    legitimate reasons" supported by substantial evidence in the record.  Orn v. Astrue, 495 F.3d

27    625, 632-33 (9th Cir. 2007).

28        The ALJ did provide specific and legitimate reasons for giving little weight to the opinion

1    of Dr. Morgan.  Dr. Morgan opined that Plaintiff met the listing requirements and had been

2    disabled since he had initially applied for disability, however the ALJ rejected this opinion as it

3    touched on the ultimate issue of disability which is reserved to the commissioner and is not

4    entitled to controlling weight. (AR 29.)  "The treating physician's opinion is not . . . necessarily

5    conclusive as to either physical condition or the ultimate issue of disability."  Magallanes v.

6    Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

7         The ALJ found that Dr. Morgan "relied quite heavily on the subjective report of

8    symptoms and limitations provided by the claimant and seemed to uncritically accept as true,

9    most if not all, of what the claimant reported.  Yet . . . there exists good reason for questioning

10   the reliability of the claimant's subjective complaints."  (AR 29.)  While Plaintiff contends that

11   Dr. Morgan stated that his September 2010 assessment was based on objective findings and not

12   on subjective reports, review of the medical record indicates otherwise.  Dr. Morgan's treatment

13   notes relate Plaintiff's subjective complaints and contain few objective findings.  "The ALJ need

14   not accept the opinion of any physician, including a treating physician, if that opinion is brief,

15   conclusory, and inadequately supported by clinical findings."  Chaudhry v. Asture, 688 F.3d 661,

16   671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th

17   Cir.2009)).  Further, the ALJ may properly reject the opinion of a treating physician that is based

18   in large extent on the claimant's self-reports that have been discredited.  Tommasetti v. Astrue,

19   533 F.3d 1035, 1041 (9th Cir. 2008).

20        While Plaintiff argues that the ALJ relied on one treatment note to support his findings,

21   the Court finds this not to be the case and substantial evidence supports the ALJ's decision.  The

22   ALJ found that in July of 2010, Dr. Morgan noted progressive improvement and emotional

23   functioning and decreased Plaintiff's visits to once per month.  (AR 27.)   However, on

24   September 20, 2010, Dr. Morgan noted that Plaintiff had a poor response to treatment.  (AR 27.)

25   The record shows that Plaintiff was initially seen by Dr. Morgan in July 2009 and the treatment

26   plan included weekly psychotherapy.  (AR 422-23.)  On March 2, 2010, Dr. Morgan notes

27   Plaintiff presented with improvement in his emotional functioning.  Plaintiff is selling items on

28   eBay, working with his band practicing and hoping to get "gigs" on the weekends to supplement

his income.  (AR 429.)  Plaintiff appears somewhat emotionally drained, which is characteristic, but is presenting with some improvement in his affect.  Plaintiff has declared bankruptcy and his functioning is improved.  Due to the relative improvement in Plaintiff's emotional functioning he is not scheduling another appointment, but Plaintiff should call if he needs additional consultation.  (AR 429.)

Plaintiff saw Dr. Morgan again on June 1, 2010 and he was distressed because he was being denied access to his grandchildren.  Plaintiff was anxious to quite agitated and was rather fragile emotionally.  (AR 428.)  On June 16, 2010, Plaintiff saw Dr. Morgan and was in tears the entire session because he was not being allowed to see his grandchildren.  (AR 427.)  On June 29, 2010, Dr. Morgan noted that Plaintiff was depressed and tearful, but was feeling somewhat better regarding the status with his grandchildren.  Plaintiff had fragile emotional functioning, although he was responsive to supportive psychotherapy and reported that he enjoys walking his dog, music, etc.  (AR 426.)

On July 13, 2010, Dr. Morgan reported that Plaintiff was diligently pursuing employment, but had not yet received any offers.  At times Plaintiff reported being overwhelmed by strong emotions, and was tearful at times.  Dr. Morgan stated he had likely thought blockage.  (AR 425.)

On July 27, 2010, Dr. Morgan noted that Plaintiff was showing slow, progressive improvement and emotional functioning and due to the progressive improvement and emotional functioning Plaintiff would be seen in one month.  (AR 424.)  Plaintiff was next seen by Dr. Morgan on September 20, 2010 because he had papers that needed to be filled out for the Department of Social Services.   It was noted that Plaintiff's wife had discontinued her employment.  (AR 416.)  Dr. Morgan completed the papers finding that Plaintiff was markedly impaired in all areas.  (AR 417-420.)

The record supports the ALJ's finding that Dr. Morgan noted progressive improvement and reduced the frequency of Plaintiff's visits due to such improvement.  (AR 29.)  The ALJ found this was inconsistent with Dr. Morgan's September 20, 2010 opinion that Plaintiff had poor response to treatment.  (AR 29.)  The ALJ may reject the opinion of a physician that is

1  inconsistent with his treatment notes.  Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003).

2  Plaintiff contends that Dr. Morgan's opinion is consistent with the treatment notes of Dr.

3  Hetnal.  However, Dr. Hetnal's notes, while difficult to read, do not suggest the marked

4  impairment in all areas found by Dr. Morgan.  On July 10, 2009, Dr. Hetnal noted that Plaintiff's

5  depression and anxiety had decreased.  (AR 213.)  On October 14, 2009, Dr. Hetnal reports that

6  Plaintiff got depressed for one day, but overall is feeling okay.  (AR 211.)  On November 16,

7  2009, Plaintiff reported that he had depression for the last one to two weeks and a "little bit" of

8  anxiety.  (AR 324.)  On December 17, 2009, Dr. Hetnal notes that Plaintiff is overall improved.

9  (AR 322.)

10  On January 14, 2010, Dr. Hetnal notes that Plaintiff's depression and anxiety are

11  decreased.  He is overall improved.  (AR 321.)  On February 16, 2010, Dr. Hetnal reports that

12  Plaintiff is relieved as he has declared bankruptcy.  He is occasionally depressed, but able to

13  cope.  (AR 320.)  In April 2010, Dr. Hetnal notes that Plaintiff is depressed but is refusing any

14  change in his medication.  (AR 316.)  On May 5, 2010, Plaintiff's Wellbutrin was decreased and

15  his depression and anxiety had decreased.  (AR 315.)  On May 28, 2010, Plaintiff presented with

16  situational depression.  (AR 480.)  He had discontinued his medication because he did not feel it

17  was helping.  After a prolonged discussion, Plaintiff agreed to a change in medication.  (AR

18  481.)

19  On June 22, 2010, Plaintiff reported that his depression is up and down.  (AR 478.)

20  Plaintiff was feeling better with no seizure activity.  (AR 479.)  On July 22, 2010, Plaintiff states

21  he gets depressed at times, but is able to cope.  (AR 477.)  On September 17, 2010, Plaintiff

22  complained of feeling depressed, sad.  He was leaving for a short vacation.[2]  (AR 743.)  On

23  October 12, 2010, Plaintiff reported his depression seemed better. (AR 472.)  On November 12,

24  2010, Plaintiff reported that his depression was not as bad.  (AR 470.)  On December 27, 2010,

25  Plaintiff complains his depression is worse since decreasing his Wellbutrin.  (AR 469.)

26  On March 21, 2011, Dr. Hetnal notes Plaintiff still has some depression, medication

27

28  [2] While Plaintiff states that Dr. Hetnal suggested he follow-up with Dr. Morgan, based upon the Court's review of the record, this notation states that Plaintiff is continuing to see Dr. Morgan.

1   helps.  (AR 465.)  After prolonged discussion, Plaintiff agreed to try a new medication.  (AR

2   466.)  On March 29, 2011, Plaintiff reported he was feeling okay.  (AR 464.)  On May 9, 2011,

3   Plaintiff reported that his depression is okay.  (AR 463.)  On May 31, 2011, Dr. Hetnal notes that

4   Plaintiff is struggling with depression.  (AR 461.)  On June 30, 2011, Plaintiff reported he was

5   feeling depressed.  (AR 562.)  Plaintiff was seen on July 28, 2011 and was upset because he

6   thought his wife might leave him.  Plaintiff was doing okay with medication.  (AR 567.)  On

7   August 25, 2011, Plaintiff appeared upset because his wife bought tickets to go to Ireland and

8   then she cancelled his ticket.  (AR 566.)  On August 30, 2011, Dr. Hetnal notes that Plaintiff has

9   situational depression.  Plaintiff is upset that his wife is taking a separate vacation.  (AR 565.)

10      Additionally, Dr. Cook notes on June 29, 2009; December 22, 2009; December 16, 2010;

11  and June 10, 2010 that Plaintiff's mood is euthymic.[3]  He has appropriate affect and excellent

12  insight.  (AR 245, 305, 491, 493.)  Contrary to Plaintiff's contention, the longitudinal evidence

13  does not support Dr. Morgan's opinion that Plaintiff was markedly limited in all areas.

14      Further, Dr. Morgan's opinion is contradicted by the opinion of Dr. Von Bolschwing who

15  completed a psychological examination of Plaintiff on July 6, 2010.  Dr. Von Bolschwing

16  examined and performed independent testing of Plaintiff.  (AR 341-42.)  While Dr. Von

17  Bolschwing found that Plaintiff's condition was partially controlled by medication, based on her

18  examination, Dr. Von Bolschwing found that Plaintiff had the ability to understand, remember,

19  and carry out simple instructions without difficulty; mild difficulty with detailed and complex

20  instructions; mild to moderate difficulty maintaining attention and concentration for the duration

21  of the examination; adequate persistence and pace; and mild to moderate difficulty in enduring

22  the stress of the interview.  (AR 343.)  Dr. Von Bolschwing opined that Plaintiff would have

23  moderate difficulty adapting to changes in routine work-related settings and his ability to interact

24  with the public, supervisors and coworkers appeared to be limited.  (AR 343.)  Where the

25  treating physician's opinion is contradicted by the opinion of an examining physician who based

26  the opinion upon independent clinical findings that differ from those of the treating physician,

27

28  [3] Moderation of mood, not manic or depressed.  Stedman's Medical Dictionary 678 (28th Ed. 2006).

1    the nontreating source itself may be substance evidence, and the ALJ is to resolve the conflict.

2    Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

3        The ALJ provided specific and legitimate reasons that are supported by substantial

4    evidence and did not err in giving little weight to the opinion of Dr. Morgan.  Plaintiff's motion

5    to remand on this ground is denied.

6        **C.    Residual Functional Capacity Assessment**

7        Plaintiff also contends that the ALJ erred by failing to include the limitation that Plaintiff

8    was limited in his ability to interact with supervisors and co-workers in the residual functional

9    capacity assessment.  (ECF No. 16 at 9.)  Plaintiff further argues that the failure to explain why

10   this limitation was not included, as well as Plaintiff's moderate limitations in adapting to changes

11   in work related settings and maintaining attention and concentration, made the VE's testimony of

12   no evidentiary value.  (Id. at 10-11.)

13       Defendant responds that determining the residual functional capacity is exclusively the

14   role of the ALJ, not a medical source.  (ECF No. 17 at 7.)  Defendant additionally argues that the

15   ALJ is not required to include every recommendation in the functional capacity assessment, but

16   can synthesize the limitations supported by the record.  (Id. at 17.)

17       Residual functional capacity is the most that a claimant can still do despite his limitations

18   and represents an assessment based on all relevant evidence.  20 C.F.R. § 404.1545(a)(1); 20

19   C.F.R. § 416.945(a)(1).  Hypothetical questions posed to the vocational expert by the ALJ "must

20   set out all the limitations and restrictions of the particular claimant."  Valentine v. Comm. Of

21   Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original) (quoting Embrey v.

22   Bowen, 849 F.2d 418, 422 (9th Cir. 1999)).  The hypothetical posed by the ALJ must be based

23   on medical assumptions supported by substantial evidence in the record that reflects each of the

24   limitations.  Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001).  If the hypothetical

25   presented to the vocational expert is not supported by the medical evidence in the record, the

26   vocational expert's opinion about a claimant's residual functional capacity has no evidentiary

27   value.  Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  The ALJ does not have to

28   accept all restrictions presented, but can accept or reject restrictions as long as they are supported

1   by substantial evidence.  Magallanes, 881 F.2d at 756-57.

2          1.      Moderate Limitations

3          Plaintiff contends that the ALJ erred by not including his moderate limitations in

4   adapting to changes in work related settings and maintaining attention and concentration.

5   Plaintiff argues that failing to include the moderate limitations in his ability to adapt to routine

6   work related setting and maintaining concentration and attention would severely limit the

7   potential occupational base.

8          Dr. Von Bolschwing's report states that Plaintiff has mild to moderate difficulties in

9   maintaining attention and concentration for the duration of the evaluation and is likely to have

10  moderate difficulties in adapting to changes in the work setting.  (ECF No. 343.)  In determining

11  Plaintiff's residual functional capacity, the ALJ determined that he was limited to jobs requiring

12  him to perform simple routine tasks.  (AR 29.)  This was the hypothetical presented to the VE

13  during the hearing.  (AR 59.)

14         Plaintiff contends that the opinion of Dr. Franco is not at issue in this case.  However, the

15  ALJ gave great weight to the opinions of Dr. Franco and Dr. Von Bolschwing finding they

16  adequately considered the claimant's subjective complaints or combined effect of his

17  impairments and are consistent with the record as a whole.  (AR 28.)  To the extent that the

18  opinions conflict, Dr. Franco's opinion is relevant here and the ALJ was to resolve the conflict.

19         In determining Plaintiff's residual functional capacity, the ALJ is free to determine which

20  evidence to rely on, even though reliance on other evidence would have caused him to reach a

21  different conclusion.  Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 2004).  The ALJ is not required

22  to "discuss every piece of medical evidence."  Howard v. Barnhart, 341 F.3d 1006, 1012 (9th

23  Cir. 2003).  However, the ALJ must explain why he rejects significant probative evidence.

24  Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984).

25         a.      Attention and Concentration

26         The residual functional capacity assessment does not need to set forth all limitations

27  supported by the record, but the hypothetical presented to the VE must adequately account for

28  those limitations.  Bray v. Comm. Of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).

The ALJ considered the opinions of Dr. Von Bolschwing and Dr. Franco and determined that due to Plaintiff's limitations he had the ability to perform a wide range of medium work, but was limited to simple routine tasks.  (AR 29.)  This is consistent with Dr. Von Bolschwing's opinion that Plaintiff was able to understand, remember and carry out simple instructions without difficulty, but had mild difficulty with detailed and complex instructions.  (AR 343.)  Dr. Von Bolschwing did not determine that Plaintiff was unable to work but that he had mild to moderate difficulty maintaining concentration and attention for the duration of the interview.  (AR 343.)

On July 31, 2010, Dr. Franco completed a Psychiatric Review Technique.  (AR 349-359.)  Dr. Franco found that Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.  (AR 357.)

Dr. Franco also completed a mental residual functional capacity assessment.  (AR 360-362.)  Dr. Franco found that Plaintiff was mild to moderately limited in his ability to sustain concentration and pace.  (AR 360-61.)  With these mild to moderate limitations, Dr. Franco found that Plaintiff was able to maintain concentration, persistence, and pace for 2 hour increments.  (AR 362.)  The ALJ considered this in determining that Plaintiff was capable of performing medium work, but limited to jobs requiring simple routine tasks.  (AR 29.)  In this instance, the ALJ's hypothetical that Plaintiff was limited to simple routine tasks captured any moderate limitation regarding attention and concentration.[4]  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

### b.      Limited interaction with supervisors and coworkers

The ALJ found that Plaintiff retained the ability to interact with supervisors and coworkers.  Dr. Von Bolschwing's report states that Plaintiff's ability to interact with the public, supervisors, and coworkers appears to be limited.  (AR 343.)  Dr. Franco found that Plaintiff was moderately limited in his ability to interact appropriately with the general public, but not

---

[4] Defendant argues that Stubbs-Danielson stands for the proposition that moderate limitations are captured when the claimant is limited to simple, repetitive tasks.  However, Stubbs-Danielson made clear that moderate limitations are captured in the limitation to simple repetitive tasks where the assessment is consistent with the restrictions identified in the medical record.  Id. at 1174.  In reviewing the record, the Stubbs-Danielson court found that the ALJ properly incorporated the recommendations related to pace and the claimants other mental limitations.  Id.

significantly limited in his ability to interact with supervisors or coworkers.  (AR 361.)  Dr. Franco opined that Plaintiff had the ability to interact appropriately with supervisors and co-workers, but was limited in his ability to interact with the public.  (AR 362.)

The ALJ accepted the residual functional capacity assessment of Dr. Franco which found that Plaintiff was not significantly limited in his ability to interact with supervisors and coworkers as it adequately considered Plaintiff's subjective complaints and was consistent with the record as a whole.  (AR 25.)  The ALJ found that Plaintiff had mild difficulties in social functioning.  "He engages in internet social websites such as Facebook, plays music in a bad, and takes his dog for daily walks."  (AR 25.)  The ALJ stated that the residual functional capacity assessment was not inconsistent with the actual treatment notes of Plaintiff's treating providers nor is it inconsistent with Plaintiff's daily activities of living and social functioning Plaintiff admitted to during the hearing and in the record evidence.  (AR 29.)  The ALJ noted that Plaintiff stated he is thinking of taking on new guitar students which suggests he has provided guitar lessons to students and he plays in a band.  (AR 28.)

The evidence in the record shows that Plaintiff has a band that he practices with and they are pursing performing on the weekends to earn supplemental income.  (AR 429.)  Plaintiff also stated that he is considering taking on additional guitar students which does support the ALJ's determination that Plaintiff was giving guitar lessons to students.  (AR 432.)  These types of activities require levels of interaction with Plaintiff's students and the members of his band that would indicate Plaintiff's ability to interact with others he is familiar with on a regular basis is not significantly limited.  Substantial evidence supports the ALJ's finding that Plaintiff retains the ability to interact with coworkers and supervisors.

### d.    Adapting to routine work related settings

Dr. Von Bolschwing also found that Plaintiff was likely to have moderate difficulty adapting to changes in routine work-related settings.  (AR 343).  Dr. Franco found that Plaintiff was not significantly limited in the area of adaption.  (AR 361.)

In determining Plaintiff's residual functional capacity, the ALJ did not find that Plaintiff was significantly limited in the area of adaption.  As previously discussed, Plaintiff was found to

1  be providing guitar lessons to students and had a band that was looking to perform "gigs" on the

2  weekends to earn supplemental income.  (AR 25, 29.)  Providing guitar lessons to students,

3  practicing with his band members, and performing in different venues are all activities require

4  Plaintiff to adapt.  This ability to adapt would be applicable to the work setting.  As such, these

5  activities are substantial evidence in support of the ALJ's decision that Plaintiff is not

6  significantly limited in the area of adaption.  (AR 29-30.)

7         The Court finds that the hypothetical presented to the VE properly considered Plaintiff's

8  mild to moderate limitations in concentration and pace.  Additionally, the hypothetical presented

9  to the VE properly considered Plaintiff's ability to interact with supervisors and coworkers an

10  ability to adapt to the work setting.  Substantial evidence supports the residual functional

11  capacity presented to the VE.  Plaintiff's motion for remand on these grounds is denied.

12                                              **V.**

13                               **CONCLUSION AND ORDER**

14         Based on the foregoing, the Court finds that the ALJ did not err in determining the

15  weight to be given to Dr. Morgan's opinion; the residual functional capacity appropriately

16  captured Plaintiff's mild to moderate limitations in attention and substantial evidence supports

17  the ALJ's finding that Plaintiff retained the ability to adapt to changes in routine work-related

18  settings and to interact with supervisors and coworkers.  Accordingly,

19         IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the

20  Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be

21  entered in favor of Defendant Commissioner of Social Security and against Plaintiff Ronald

22  Harry Jones.  The Clerk of the Court is directed to CLOSE this action.

23

24  IT IS SO ORDERED.

25     Dated:   **June 27, 2014**
                                      _____
26                                      UNITED STATES MAGISTRATE JUDGE

27

28